*United States v. Gil (Murillo-Morales)*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21ˢᵗ day of October, two thousand nineteen.

**PRESENT:**
> **DENNIS JACOBS**
> **ROBERT D. SACK**
> **PETER W. HALL,**
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee,*

v.                                                                           17-1691

LUIS GIL,

> *Defendant,*

ROMULO MURILLO-MORALES,

> *Defendant-Appellant.*

1

Appearing for *Defendant-Appellant*:     ALAN M. NELSON, Law Office of Alan Nelson, Esq., Lake Success, NY.

Appearing for *Appellee*:     MATTHEW LAROCHE (Won S. Shin, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY.

---

Appeal from a judgment of the United States District Court for the Southern District of New York (Torres, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on May 23, 2017, is **AFFIRMED**.

Defendant-Appellant Romulo Murillo-Morales appeals from the judgment of the district court following a jury trial. Murillo-Morales was indicted on one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. On appeal Murillo-Morales principally challenges the district court's denial of (1) his motion to suppress evidence obtained from the search of a co-defendant's Volkswagen Passat, (2) his motions in limine to preclude introduction of certain statements, and (3) his post-judgment motion for judgment of acquittal or a new trial. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

I.

With respect to the motion to suppress, there is no basis on which to reverse the district court's denial of the motion. On an appeal from a trial court's ruling on a motion

2

to suppress, we review the court's legal conclusions de novo and its findings of fact for clear error. *United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015).

The district court properly concluded that Murillo-Morales, as a passenger in the Passat, lacked standing to challenge the search of the Passat. *See Rakas v. Illinois*, 439 U.S. 128, 148–49 (1978). Murillo-Morales asserts that he somehow obtained a right to exclude others from the Passat by virtue of co-defendant Luis Gil leaving him in the Passat during the attempted cocaine sale. That argument is unavailing. Murillo-Morales does not assert a right to exclude from the Passat Gil, the driver of the Passat, who was in the vehicle at the time of the stop; Murillo-Morales therefore "assumed the risk that [Gil] would grant consent for the search," which is exactly what Gil did. *See United States v. Santillan*, 902 F.3d 49, 62 (2d Cir. 2018).

The circumstances leading to the stop of the Passat, moreover, helped create probable cause to stop the vehicle.[1] The subsequent observation of what appeared to be a brick of cocaine in plain view was clearly sufficient, in conjunction with what police had already observed, to establish probable cause for Murillo-Morales's arrest.

---

[1] Police stopped the vehicle only after they knew (a) his codefendant Luis Gil had agreed to sell cocaine; (b) Gil arrived at the Bronx residence with Murillo-Morales in tow; (c) Murillo-Morales exited the Passat and circled around to the driver's-side door and leaned into the Passat; (d) the hazard lights then flashed, after which Gil emerged from the Passat holding a black bag; (e) Gil entered the Bronx residence with the black bag; (f) "Marco," a confidential Government source in the residence, placed a call to an officer and feigned a reason to pull out of the cocaine buy that was going to take place there; and (g) Gil returned to the Passat with the black bag.

Murillo-Morales argues next that the district court erred by denying his three motions in limine seeking to preclude introduction of (1) statements made by Gil concerning a prior sale in Fort Lee NJ ("the Fort Lee Statements"), (2) text messages to and from an individual referred to in Murillo-Morales's phone as "Pedy" ("the Pedy Texts"), and (3) a recording of a phone call Murillo-Morales placed from prison ("the Prison Call") several days after his arrest. Review of a district court's evidentiary rulings is for abuse of discretion. *United States v. Hendricks*, 921 F.3d 320, 326 (2d Cir. 2019). We conclude that the district court acted well within its discretion in denying these motions.

*The Fort Lee Statements.* Murillo-Morales first insists that Gil's statement during the attempted cocaine sale that he was delayed and a kilogram short because of an earlier drug sale in Fort Lee, New Jersey was not admissible as a coconspirator statement under Federal Rule of Evidence 801(d)(2)(E). This is so, according to Murillo-Morales, not because there was no conspiracy or because the statements were not in furtherance of it, but because Murillo-Morales was not a member of the conspiracy.

Murillo-Morales focuses—to the exclusion of all other evidence tending to demonstrate that he was a conspiracy member—on a so-called "Supplier Call" placed by Gil during the attempted cocaine sale. Murillo-Morales insists that a call Gil placed to Murillo-Morales's phone when Gil was in the Bronx residence occurred prior to the actual Supplier Call, which was captured on a recording taken by "Marco," a confidential

4

Government source. Marco's recording captured Gil evidently calling his supplier in search of additional cocaine. The Government argues that Gil was calling Murillo-Morales; but since Gil advised during the call that he was in New York and since Murillo-Morales (downstairs in the car) already knew where Gil was, Murillo-Morales argues that Gil must have been speaking with someone else. While this point is well taken, Murillo-Morales nonetheless presents no argument as to why the remaining evidence submitted by the Government was insufficient to establish by a preponderance of the evidence that he was a member of the conspiracy. *See United States v. Mandell*, 752 F.3d 544, 552 (2d Cir. 2014). As discussed below, sufficient evidence supported Murillo-Morales's conspiracy conviction.

*The Pedy Texts.* Murillo-Morales contends that the Pedy Texts should have been precluded because they were irrelevant to the charged conspiracy and unduly prejudicial. True, the primary narrative pressed by the Government involved the attempted cocaine sale at the Bronx residence. But the charging language was not so narrow: the indictment charged that, "[i]n or about January 2015, including on or about January 30, 2015," Murillo-Morales and Gil, "and others known and unknown," conspired to sell cocaine. App. 19. Further, the Government submitted evidence demonstrating that the Pedy Texts were sent during the same period of time in which Gil was both negotiating the attempted cocaine sale with Jose Henriquez, a cooperating witness, and communicating with Murillo-Morales. Given this, the district court did not

5

abuse its discretion finding that the Pedy Texts were admissible as direct evidence of the charged conspiracy. Necessarily, then, Murillo-Morales's argument that the Pedy Texts were unduly prejudicial—an argument premised solely on the assumption that the Pedy Texts were propensity evidence—likewise fails.[2]

*The Prison Call.* Finally, Murillo-Morales maintains that statements he made during the Prison Call—that he "ran a stupid errand here" and needed his car moved and room cleaned—were not admissions in furtherance of the charged conspiracy and were thus not admissible under the hearsay exceptions. This is wrong. Murillo-Morales's statements were not hearsay, *see* Fed. R. Evid. 801(d)(2)(A), and hence were admissible regardless of whether they qualified under an exception to the hearsay rule. *See United States v. Russo*, 302 F.3d 37, 43 (2d Cir. 2002). The district court acted well within its discretion in determining that these statements were not unduly prejudicial under Federal Rule of Evidence 403 merely because the statements were susceptible to alternative interpretations. *See United States v. Diaz*, 878 F.2d 608, 615 (2d Cir. 1989) ("The logical inferences resulting from proffered evidence do not engender the unfair prejudice against which Rule 403 is directed." (internal quotation marks omitted)).

---

[2] In any event, any error was harmless in light of the overwhelming evidence of Murillo-Morales's guilt. *See United States v. Paulino*, 445 F.3d 211, 219 (2d Cir. 2006) ("An evidentiary error not affecting substantial rights is harmless if [this Court] can conclude with fair assurance that the jury's judgment was not substantially swayed by the error." (internal quotation marks omitted)).

6

III.

Murillo-Morales urges this Court to conclude that the evidence presented at trial was insufficient as a matter of law to demonstrate his participation in the charged narcotics conspiracy. "This Court reviews a sufficiency of the evidence challenge using the same standard utilized by the district court in ruling on a Rule 29 motion." *United States v. Pugh*, 937 F.3d 108, 118 (2d Cir. 2019). "The test for sufficiency … is whether a rational jury could conclude beyond a reasonable doubt that a defendant is guilty of the crime charged." *Id.* (quotation marks omitted)*.* The court must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the government. *Id.* Applying these standards, we have no trouble concluding that Murillo-Morales's conviction was supported by sufficient evidence.

Murillo-Morales offers a series of alternative inferences a reasonable jury could have drawn from the trial evidence. For instance, he concedes that a "logical conclusion" to be drawn from the hazard-blinker incident was that he was attempting to help Gil open the trap, but he submits that a better inference was that he was attempting to open the trunk (despite nothing being in the trunk) and that Gil secretly opened the trap while Murillo-Morales was circling the Passat (because Gil did not want Murillo-Morales to know about cash stashed in the trap). Appellant Br. at 40. He also contends that because an officer who was surveilling the scene failed to note in his contemporaneous description that Gil told Henriquez that he (Gil) had to get something out of the trap,

7

Henriquez's testimony on this point was "directly contradicted." *Id.* at 41. Murillo-Morales argues that the more logical inference to be drawn from Gil's call to Murillo-Morales's phone during the attempted cocaine sale was that Gil was simply informing Murillo-Morales that he would be delayed.

To be sure, these are mostly reasonable inferences, but the jury was not required to draw them. *See, e.g.*, *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999). And because sufficiency-of-the-evidence review requires a court to determine "whether a rational jury could conclude beyond a reasonable doubt that a defendant is guilty of the crime charged," and in so doing must view the evidence and reasonable inferences drawn therefrom in the light most favorable to the government, *Pugh*, 937 F.3d at 118 (quotation marks omitted), the district court did not err in concluding that Murillo-Morales's sufficiency challenge failed.

IV.

Finally, Murillo-Morales argues that the district court's admission of the Pedy Texts and the Prison Call into evidence resulted in a constructive amendment of, or at least a prejudicial variance from, the indictment. A properly preserved constructive-amendment or prejudicial-variance challenge is reviewed de novo. *United States v. Dove*, 884 F.3d 138, 146, 149 (2d Cir. 2018). This argument is simply an attempt to rehash his prior arguments by dressing them up in new clothes. The evidence neither constructively amended the indictment nor created a prejudicial variance from those charges. The

8

argument therefore fails for the same reasons as Murillo-Morales's challenges to the denials of his motions in limine.

* * *

We have considered Murillo-Morales's remaining arguments and find them to be without merit. The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court